UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL S. ROBERTS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>JANET NAPOLITANO, in her official capacity as Secretary of Homeland Security,<br><br>    and<br><br>JOHN S. PISTOLE, in his official capacity as Administrator of the Transportation Safety Administration,<br><br>    Defendants. | Civil Action 10-01966 (HHK) |

MEMORANDUM OPINION

Plaintiffs Michael S. Roberts and Ann Poe bring this action against Secretary of Homeland Security Janet Napolitano and Administrator of the Transportation Safety Administration ("TSA") John S. Pistole, alleging that TSA's use of advanced imaging technology ("AIT") and aggressive pat-downs to screen airline pilots at airports violates the Fourth Amendment's ban on unreasonable searches and seizures. Before the Court is defendants' motion to dismiss [#8], which argues that, because the challenged screening procedures are employed pursuant to a TSA order, the U.S. courts of appeals have exclusive jurisdiction over plaintiffs' challenge thereto. Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion must be granted.

# I. BACKGROUND

## A. TSA's Screening Procedures

Following the September 11, 2001 attacks, Congress created TSA "to prevent terrorist attacks and reduce the vulnerability of the United States to terrorism within the nation's transportation networks." Def.'s Mot. to Dismiss Ex. 1 ("Kair Decl.") ¶ 8. TSA's responsibilities include civil aviation security. *See* 49 U.S.C. §§ 114(d)(1), 44901 *et seq*. To aid in TSA's aviation security mission, Congress has directed the Secretary of Homeland Security to "give a high priority to developing, testing, improving, and deploying, at airport screening checkpoints, equipment that detects nonmetallic, chemical, biological, and radiological weapons, and explosives, in all forms, on individuals and in their personal property." *Id*. § 44925(a).

TSA's operations are guided in part by Standard Operating Procedures ("SOPs"), which provide "uniform procedures and standards" that TSA must follow. Kair Decl. ¶ 10. At issue here is TSA's Screening Checkpoint SOP, which "sets forth in detail the mandatory procedures that [Transportation Security Officers] must apply in screening passengers at all airport checkpoints, and which passengers must follow in order to enter the sterile area of any airport." Kair Decl. ¶ 10. The SOP was revised on September 17, 2010 to "direct[] the use of AIT machines as part of TSA's standard security screening procedures, as well as the use of revised procedures for the standard pat-down." Kair Decl. ¶ 11. Pursuant to the revised Screening Checkpoint SOP, TSA uses two types of AIT systems: backscatter X-ray machines and millimeter wave scanners. Kair Decl. ¶¶ 16–17. Because the SOP in question contains sensitive security information, it has not been publicly released and is not part of the record before the Court. *See* Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 5 n.4.

B.  **Plaintiffs' Allegations**

Roberts is a pilot for ExpressJet Airlines. On October 15, 2010, Roberts was asked to enter an AIT scanner at the security checkpoint at Memphis International Airport. Am. Compl. ¶ 25. After he declined, TSA agents informed Roberts that he would have to undergo a pat-down. Am. Compl. ¶¶ 28–29. After Roberts refused the pat-down, airport police were summoned and Roberts was told to leave, preventing him from making his scheduled flight. Am. Compl. ¶ 30. Because of his refusal to submit to what he sees as unduly intrusive screening procedures, Roberts is now on unpaid administrative leave. Am. Compl. ¶ 32.

Poe is a pilot for Continental Airlines. On November 4, 2010, Poe passed through the security checkpoint at Fort Lauderdale-Hollywood International Airport. Poe, who has an artificial hip, triggered the walk-through metal detector. Am. Compl. ¶ 38. TSA officials then informed Poe that she would have to either undergo a pat-down or walk through an AIT scanner. Am. Compl. ¶¶ 40–43. Poe, concerned about her privacy and the radiation produced by AIT scanners, refused. Poe was then escorted out of the airport. Am. Compl. ¶ 47. Poe's refusal to submit to TSA's screening procedures has prevented her from flying since that time. Am. Compl. ¶ 50.

Plaintiffs filed this action on November 16, 2010, alleging that TSA's screening procedures violate the Fourth Amendment's ban on unreasonable searches and seizures. *See* U.S. CONST. amend. IV. Defendants now move to dismiss plaintiff's amended complaint, arguing that this court is without jurisdiction to hear plaintiffs' Fourth Amendment claims because the U.S. courts of appeals have exclusive jurisdiction over challenges to TSA orders.

3

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint, or a claim therein, for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction . . . ."). In response to such a motion, the plaintiff must establish that the Court has subject-matter jurisdiction over the claims in the complaint. *See Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). If the plaintiff is unable to do so, the Court must dismiss the action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citing *Ex parte McCardle*, 7 U.S. 506, 514 (1868)). When resolving a motion made under Rule 12(b)(1), a court may consider material beyond the allegations in the plaintiff's complaint. *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005).

## III. ANALYSIS

The issue raised by defendants' motion to dismiss — whether this Court lacks jurisdiction to hear plaintiffs' claim because it challenges a TSA order — is identical to the issue recently decided by this Court in *Durso v. Napolitano*, 2011 WL 2634183 (D.D.C. July 5, 2011). There, as here, the plaintiffs challenged TSA's use of AIT scanners and aggressive pat-downs at airport security checkpoints. *See id.* at *1. And there, as here, defendants argued that the courts of appeals had exclusive jurisdiction over the plaintiffs' claim because it challenged a TSA order (the Screening Checkpoint SOP). Indeed, the same attorneys appear in both cases, and the two sets of briefs are largely identical. The only distinction between the two cases is that plaintiffs

4

here are pilots, whereas the *Durso* plaintiffs were passengers; but that fact has no bearing on the Court's jurisdiction to hear a challenge to TSA's security procedures. Indeed, neither party argues that the Court should treat this case differently from *Durso* on the basis of plaintiffs' status as pilots rather than passengers. Accordingly, the Court will present a somewhat abbreviated analysis here; a fuller explication of the Court's reasoning can be found in the memorandum opinion dismissing *Durso* for lack of subject-matter jurisdiction. *See id.* at *2–8.

**A.      The Screening Checkpoint SOP is an Order Subject to § 46110**

As in *Durso*, defendants' motion to dismiss is predicated on 49 U.S.C. § 46110, which provides that the U.S. courts of appeals have exclusive jurisdiction to review and "affirm, amend, modify, or set aside any part of" a TSA "order." *Id.* § 46110(a)–(c); *see Durso*, 2011 WL 2634183, at *2–3. To qualify as an "order" reviewable under § 46110, an agency determination must be final, i.e., "it 'must determine rights or obligations or give rise to legal consequences.'" *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 598 (D.C. Cir. 2007) (quoting *City of Dania Beach v. FAA*, 485 F.3d 1181, 1187 (D.C. Cir. 2007)). Here, the Screening Checkpoint SOP is final because it determines the rights and obligations of both TSA and airline passengers and pilots. *Durso*, 2011 WL 2634183, at *3.

Plaintiffs' three arguments to the contrary are unavailing. First, the fact that the SOP is subject to revision is irrelevant to whether it is "final" and thus reviewable under § 46110; agency orders are final if they "have immediate effect," which the SOP does. *Id.* (citing *Dania Beach*, 485 F.3d at 1188; *Vill. of Bensenville v. FAA*, 457 F.3d 52, 69 (D.C. Cir. 2006); *Gilmore v. Gonzales*, 435 F.3d 1125, 1130, 1133 (9th Cir. 2006)). Second, orders need not be accompanied by a comprehensive administrative record to be reviewable under § 46110; in fact,

5

the D.C. Circuit has explicitly rejected that position. *Id*. at *4 (citing *Safe Extensions*, 509 F.3d at 598). And third, an agency determination need not be preceded by public notice to be an order under § 46110. As the D.C. Circuit recently explained, § 46110 uses the term "order" broadly, and does so differently than do those provisions that suggest that orders must follow public notice. *Id*. at *4–5 (citing *Avia Dynamics, Inc. v. FAA*, 2011 WL 1466330, at *4 (D.C. Cir. Apr. 19, 2011); *Redfern v. Napolitano*, 2011 WL 1750445, at *5 (D. Mass. May 9, 2011)).

**B.    Plaintiffs' Claim is Inescapably Intertwined with a Review of the SOP**

Because the Screening Checkpoint SOP is an order,[1] plaintiffs' Fourth Amendment claim lies beyond this Court's jurisdiction either if it challenges the SOP directly or, pursuant to the doctrine of inescapable intertwinement, "if it alleges that the plaintiff was injured by [the] order and that the court of appeals has authority to hear the claim on direct review of the agency order." *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2d Cir. 2001); *see Durso*, 2011 WL 2634183, at *5; *Breen v. Peters*, 474 F. Supp. 2d 1, 4 (D.D.C. 2007). Here, as in *Durso*, it is unclear whether plaintiffs' claim is a direct challenge to the SOP. *See* 2011 WL 2634183, at *5 n.4. Regardless, the Court concludes here, as it did there, that plaintiffs' claim is inescapably intertwined with a review of the SOP.

In the inescapable-intertwinement inquiry, a "critical point" is whether review of the order by a court of appeals would allow for adjudication of the plaintiff's claims and could result

---

[1]    Other courts have reached the same conclusion as to this SOP, s*ee Redfern*, 2011 WL 1750445, at *6, and as to similar TSA orders. *See Gilmore*, 435 F.3d at 1133; *Scherfen v. U.S. Dep't of Homeland Sec.*, 2010 WL 456784, at *10–11 (M.D. Pa. Feb. 2, 2010); *Tooley v. Bush*, 2006 WL 3783142, at *26 (D.D.C. Dec. 21, 2006), *rev'd in part on other grounds sub nom. Tooley v. Napolitano*, 556 F.3d 836 (D.C. Cir. 2009), *rev'd on rehearing*, 586 F.3d 1006 (D.C. Cir. 2009); *Green v. TSA*, 351 F. Supp. 2d 1119, 1125 (W.D. Wash. 2005).

in the relief that the plaintiff requests. *Breen*, 474 F. Supp. 2d at 5 (citing *Beins v. United States*, 695 F.2d 591, 597–98 & n.11 (D.C. Cir. 1982)). Here, it is clear that a court of appeals reviewing the Screening Checkpoint SOP could rule on plaintiffs' constitutional claim. *See, e.g.*, *Gilmore*, 435 F.3d at 1135–39 (reaching the merits of the plaintiff's constitutional claims, including his Fourth Amendment claim, on § 46110 review). And although the relief sought by plaintiffs (an injunction barring the use of the challenged procedures) is not precisely the same as that available in the court of appeals (modifying or setting aside the SOP, in whole or in part),[2] that difference is not sufficient to place plaintiffs' claim beyond the reach of the inescapable-intertwinement doctrine. *See Durso*, 2011 WL 2634183, at *6 ("If a plaintiff could proceed in the district court merely by asking for an injunction barring the agency from taking the action required by the order in question, then [the intertwinement doctrine's] purpose [of preventing collateral attacks on agency action in the district courts] would be defeated." (citing *Americopters, LLC v. FAA*, 441 F.3d 726, 736 (9th Cir. 2006); *United Transp. Union v. Norfolk & W. Ry. Co.*, 822 F.2d 1114, 1120 (D.C. Cir. 1987))).

Nor can plaintiffs escape the intertwinement doctrine by seeking shelter within one of two putative exceptions thereto: cases where there has been no true administrative process and those where the plaintiff presents a broad constitutional challenge rather than an attack on a discrete agency action. Neither exception is supported by authority, binding or otherwise. Plaintiffs rely heavily on certain Ninth Circuit cases, *see, e.g.*, *Americopters*, 441 F.3d at 736, but disregard the

---

[2] As in *Durso*, the fact that plaintiffs also seek damages is irrelevant to the Court's inescapable-intertwinement analysis because their claim for damages is barred by sovereign immunity. *See Durso*, 2011 WL 2634183, at *5 n.5 (citing *Hamrick v. Brusseau*, 80 F. App'x 116, 116 (D.C. Cir. 2003); *Beins*, 695 F.2d at 598 n.11).

7

subsequent holding of *Gilmore*, in which the Ninth Circuit found that the plaintiff's claims were "'inescapably intertwined' with a review of the order" in question, notwithstanding that there had been no administrative process and that those claims were, like the claim here, broad constitutional challenges to airport security measures. *See* 435 F.3d at 1133 n.9, 1135–39. Plaintiffs have thus failed to establish that their claim is not subject to the inescapable-intertwinement doctrine.

C.  **Application of § 46110 Would Not Offend Due Process**

Finally, as it did in *Durso*, the Court must reject plaintiffs' contention that applying § 46110's jurisdictional bar here would violate the Fifth Amendment's due process guarantee by foreclosing meaningful judicial review of TSA's screening procedures. *See Durso*, 2011 WL 2634183, at *7. Plaintiffs argue that § 46110's "substantial evidence" standard, *see* 49 U.S.C. § 46110(c), in combination with the usual rule that appellate-court review of agency action is restricted to the administrative record, violates due process. But the cases on which plaintiffs rely, principally *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), were statutory, not constitutional, decisions. *See Durso*, 2011 WL 2634183, at *7 (citing *McNary*, 498 U.S. at 494; *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 126 (D.C. Cir. 2010)). Moreover, a court of appeals reviewing the SOP pursuant to § 46110 would have the power to address plaintiffs' concerns regarding the standard of review and the administrative record. *Id*. at *8 (citing 28 U.S.C. § 2347(c); *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008); *Aircraft Owners & Pilots Ass'n v. FAA*, 600 F.2d 965, 970 (D.C. Cir. 1979)). Thus, the Court cannot conclude that requiring plaintiffs to file a petition challenging the SOP in the court of appeals would infringe their due process rights.

## IV.  CONCLUSION

TSA's Screening Checkpoint SOP is an "order" in the meaning of 49 U.S.C. § 46110. Because plaintiffs' Fourth Amendment claim is inescapably intertwined with a review of that order, and because an application of § 46110's jurisdictional bar to that claim would present no due process problem, defendants' motion to dismiss must be granted.  An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.<br>
United States District Judge